896 F.Supp. 389 (1995)
UTI CORPORATION, Plaintiff,
v.
FIREMAN'S FUND INSURANCE COMPANY and American Insurance Company, Defendants.
Civ. A. No. 92-4703 (JBS).
United States District Court, D. New Jersey.
August 18, 1995.
*390 Neil S. Witkes, Jonathan E. Rinde, Manko, Gold & Katcher, Bala Cynwyd, PA, for plaintiff.
Julius F. Harms, Caron, Greenberg & Fitzgerald, Rutherford, NJ, for defendants.

OPINION
SIMANDLE, District Judge:
This is an environmental pollution insurance coverage case which was previously the subject of three separate summary judgment motions and an accompanying cross-motion raising twelve separate issues. On March 28, 1995, the court denied defendants' motions on each of the twelve grounds. UTI v. Fireman's Fund Insurance Co., 896 F.Supp. 362 (D.N.J.1995). The case is in its third year of litigation and the case is otherwise finally ready for trial. In response to a motion by plaintiff for leave to amend its complaint to cure certain inadvertent omissions and to bring the pleadings into conformity with the evidence compiled during discovery[1], defendants now bring a cross-motion to dismiss for failure to join an indispensable party under Rule 19(b), Fed. R.Civ.P.[2]
The issue presented is whether the failure of plaintiff to name as a defendant the state claims-handling entity for an insolvent, nondiverse umbrella carrier which issued plaintiff an umbrella policy to which one of defendants' excess policies follows form constitutes a failure to join an indispensable party under Rule 19(b). For the reasons stated herein, we hold that it does not.

*391 Background

Plaintiff seeks coverage under a series of comprehensive general liability (CGL) policies and excess liability policies for an environmental pollution claim against defendants, Fireman's Fund Insurance Company and its wholly owned subsidiary, American Insurance Company (collectively, "Fireman's Fund"), in connection with costs incurred in the clean-up of property found to have been contaminated with TCA and TCE, chemical solvents which had been stored in underground storage tanks at plaintiff's manufacturing plants. Proceeding under the theory that the chemicals leaked into groundwater and polluted neighboring property over a period of many years, starting between June, 1966 and February, 1968 and continuing until the storage tanks were closed in the fall of 1977, plaintiff sues under defendants' policies for multiple years. See 896 F.Supp. at 395-97.[3]
Plaintiff determined to proceed only against Fireman's Fund and American Insurance Companies, the defendants herein, and did not name as defendants the Home Insurance Company, Admiral Insurance Company, or American Universal Insurance Company, each of which also issued policies of insurance to UTI for the relevant years.[4] American Universal Insurance Company is insolvent, and the Pennsylvania Property and Casualty Insurance Guarantee Association (previously known as the Pennsylvania Insurance Guaranty Association and referred to as "PIGA" herein) has undertaken to process claims made against American Universal pursuant to statute. 40 Pa.S.A. § 991.1801 et seq.[5]
PIGA is non-diverse to plaintiff[6], and because this court's jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332, joinder of PIGA as a defendant would destroy subject matter jurisdiction. Accordingly, defendants focus only on the absence of PIGA as a named defendant, and we confine our analysis to that subject; Home and Admiral are each diverse to plaintiff, and thus plaintiff's failure to join these additional insurers at most amounts to the failure to join "necessary" parties under Rule 19(a), Fed.R.Civ.P. Because the defense of failure to join necessary parties is waived if not pleaded, see, e.g., State Farm Mutual Automobile Ins. Co. v. Mid-Continent Cas. Co., 518 F.2d 292, 294 (10th Cir.1975), and because defendants did not raise a Rule 19 defense in their Answer (indeed, it was never raised in any manner until initiation of the present cross-motion to dismiss), we are concerned only with the question of whether PIGA is "indispensable" to the litigation within the meaning of Rule 19(b), Fed. R.Civ.P.
American Universal issued only a single policy to UTI during the time period we are concerned with herein. That policy is an umbrella policy which covers May 7, 1977 through May 7, 1978, and which sits directly above the Home primary insurance policy and directly below Fireman's Fund's $4 million excess liability policy number XLX-12698751. It is undisputed that that Fireman's Fund's excess policy "follows form" to the American Universal policy, which means that, with certain exceptions, it incorporates the terms and conditions of that policy. The question before the court is whether the party which issued the underlying umbrella policy is "indispensable" to the instant coverage action.

*392 Discussion

Fed.R.Civ.P. 12(b)(7) provides that an action may be dismissed for failure to join an indispensable party pursuant to Fed.R.Civ.P. 19. Fed.R.Civ.P. 19 includes a two-part test to determine whether an action may proceed without the joinder of certain persons. The Rule provides:
(a) Persons to be joined if feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest....
(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
Id. A determination that parties are not necessary according to the criteria set forth in Fed.R.Civ.P. 19(a)(1) and 19(a)(2) would obviate the need for discussion of Fed. R.Civ.P. 19(b) and the action could proceed against the named defendants. Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 402 (3d Cir.1993). For the reasons that follow, PIGA does not qualify as a necessary party within the meaning of Rule 19(a).
"Under Rule 19(a), we ask first whether complete relief can be accorded to the parties to the action in the absence of the unjoined party." Id. at 405. It is clear in the present case that PIGA's absence does not impact whether complete relief can be accorded here, where liability among UTI's insurers is several.
As this court explained in denying defendants' motion for summary judgment on all post-1975 policies, which defendants propounded on the ground that only one "occurrence" had taken place, arguing that because no TCE was stored in the storage tanks after July 12, 1975, no TCE could have leaked after that date, it is not a "leak" which, in the pollution context, triggers coverage. Rather, the "occurrence"-based policies at issue provide that coverage is triggered by an accident or continuous or repeated exposure to conditions which results in ("bodily injury" or) "property damage" during the term of the policy. Thus, if "property damage" occurred at any point in time, even after the date when new leaks could have taken place, there could be coverage under the policies. The court concluded that plaintiff must be permitted the opportunity to create a factual record to convince a trier of fact that property damage occurred on or after the 1975 date. See 896 F.Supp. 382-84. Thus, one or more of the policies issued by defendants may be "triggered" by the pollution claims, depending upon the factual record developed at trial. Assuming property damage occurred in more than one policy year, each policy on the risk at any date when property damage occurred is liable for the damages incurred thereby by plaintiff.
Once multiple policies have been triggered for a particular claim, the question becomes how to allocate responsibility for the costs involved among triggered policies. Pennsylvania law, which the parties have stipulated governs the instant action, provides that the insured is "free to select the policy or policies *393 under which it is to be indemnified." J.H. France Refractories Co. v. Allstate Ins. Co., 534 Pa. 29, 41 626 A.2d 502, 508 (1993). The J.H. France court, confronting the analogous problem of how to allocate responsibility among insurers to indemnify the insured for liabilities incurred for asbestos-related diseases, reviewed the record evidence which supported the conclusion that asbestos-related diseases are progressive in nature, causing tissue injury over a period of years, and the language of the policies themselves, which supported the conclusion that there was no basis for requiring a reduction of the insurer's liability if an injury occurs only in part during a policy period, and held:
[W]e conclude that each insurer which was on the risk during the development of an asbestosis-related disease is a primary insurer. In order to accord J.H. France the coverage promised by the insurance policies, J.H. France should be free to select the policy or policies under which it is to be indemnified.
Id. Under J.H. France, once multiple policies are triggered, each is responsible for the full amount of the loss up to its limit of liability, and an insured may pick and choose among the triggered policies to satisfy its liability.
Thus, Pennsylvania law provides that liability among each of UTI's insurers on the risk for a period in which "property damage" occurred is several. In Janney, which involved an action against only one of two co-obligors on a contract, the Third Circuit determined that where liability is several, complete relief may be granted in a suit against any one of the severally liable parties. 11 F.3d at 406. Thus, PIGA is not "necessary" under Rule 19(a)(1), and we turn to an examination of Rule 19(a)(2) to determine if PIGA is "necessary" under either of the subparts of that section.
Subsection (a)(2)(i) of Rule 19 requires the court to ascertain whether a determination of the rights of the parties before it would impair or impede an absent party's ability to protect its interest in the subject matter of the litigation. See id. This is the subsection that various courts have invoked in finding lower layer insurers necessary (and ultimately indispensable) to coverage actions against following form excess carriers. See, e.g., Eljer Industries, Inc. v. Aetna Cas. & Sur. Co., No. 93-4320, 1994 U.S.Dist. LEXIS 6167, at *18-19 (N.D.Ill. May 9, 1994) (Defendants' "form-following" policies "simply adopt many of the terms and conditions of the underlying policies. As a result, determination of coverage issues will necessarily turn on this court's construction of the underlying policies. While the underlying carriers, to the extent that they are not parties to this action, may not be precluded from relitigating the meaning of their own policies in state court, a state court may be inclined, albeit not required, to adopt an interpretation similar to that which this court decides is correct. The absent insurers, then, will have lost the opportunity to present their arguments regarding the interpretation of their policies at the time when they would be most forceful, i.e., when the interpretation of the contract terms were first litigated."); Rhone-Poulenc, Inc. v. International Ins. Co., No. 94-3303, 1994 WL 714555, at *2-3 (N.D.Ill. Dec. 21, 1994) (citing Eljer).[7] The law in the Third Circuit, however, is to the contrary.
In Janney, the Third Circuit expressly rejected the proposition that where a piece of litigation may result in a "persuasive precedent" against an absent party, the disposition of the action in that party's absence would impair or impede that party's ability to protect its interest within the meaning of Rule 19(a)(2)(i). Indeed, the district court was reversed on this very ground:
We are not sure what the district court means by the phrase "persuasive precedent." *394 To the extent it involves the doctrine of stare decisis, we are not inclined to hold that any potential effect the doctrine may have on an absent party's rights makes the absent party's joinder compulsory under Rule 19(a) whenever "feasible." Such a holding would greatly expand the class of "necessary" or compulsory parties Rule 19(a) created. Moreover, to whatever extent the rule's phrase "as a practical matter impair or impede" had broader meaning than that given by principles of issue preclusion, we think the effect of the federal decision must be more direct and immediate than the effect a judgment in [plaintiff's] favor would have on [the absent party] here.... In any event, we do not believe any possibility of a "persuasive precedent" requires joinder under section 19(a)(2)(i).
Id. at 407. Because any decision this court renders on Fireman's Fund excess policy number XLX-12698751 will at most be a "persuasive precedent" in any state court which might ultimately be presented with a claim by UTI against PIGA[8], and will in any event not preclude the absent party's full assertion of its claims or defenses under any concept of issue preclusion, Rule 19(a)(2)(i) does not make PIGA a necessary party to the present suit.
Nor is PIGA "necessary" to the litigation by operation of Rule 19(a)(2)(ii). That subsection requires us to decide whether continuation of this action in the absence of PIGA would expose Fireman's Fund to the "substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Janney, 11 F.3d at 411 (quoting the Rule). In Janney, the Third Circuit disagreed with the district judge's finding that the absence of a co-obligor would expose the named defendant to such a risk:
It is, of course, possible, as the district court concluded, that if [defendant] is held liable in the federal action, it "may ultimately be responsible for the entire claim if [the co-obligor] is found not liable in the State Court Action." [citation omitted] This is not, however, the double liability that Rule 19(a)(2)(ii) refers to. Thus, the district court erred in concluding that continuation of this action exposed [defendant] to a risk of double liability within the meaning of Rule 19(a)(2)(ii).
Id. at 411. As already determined, the J.H. France decision operates to make liability among UTI's insurers several. As the Janney court articulated, there is no risk of double liability on that basis:
The possibility that [defendant] may bear the whole loss if it is found liable is not the equivalent of double liability. It is instead a common result of joint and several liability and should not be equated with prejudice. Inherent in the concept of joint and several liability is the right of a plaintiff to satisfy its whole judgment by execution against any one of the multiple defendants who are liable to him, thereby forcing the debtor who has paid the whole debt to protect itself by an action for contribution against the other joint obligors.
Id. at 412. There is no ground, then, for finding that subsection 19(a)(2)(ii) operates to make PIGA a necessary party herein.
Having determined that none of the specified bases for finding a party "necessary" to the disposition of the litigation applies to PIGA, we need not advance to a Rule 19(b) inquiry. Id. at 404. In any event, even if we were to reach the Rule 19(b) inquiry, we would conclude that PIGA is not indispensable for any number of reasons.
The Rule 19(b) inquiry turns on the question of whether "in equity and good conscience" the action should not proceed in the unavailable party's absence. As set forth above, this case is three years old. Massive discovery has taken place, voluminous pretrial motion practice has proceeded, and the case is virtually trial-ready. Both parties, as well as the court, have a tremendous investment in the proceedings. These factors weigh heavily in favor of permitting the action to continue in this forum without the *395 absent party under an "equity and good conscience" standard.
At argument, defendants' counsel appeared to argue that the prejudice with which he was most concerned was that, in the absence of PIGA's 1977-78 policy, and assuming plaintiff proves property damage occurred in multiple policy years including 1977-78, plaintiff would opt to select coverage from earlier policy years to maximize its recovery. This is beside the point. As plaintiff aptly responds: "Fireman's Fund's potential liability for the entire loss results from UTI's absolute right under the Pennsylvania Supreme Court's decision in J.H. France `to select the policy or policies under which it is to be indemnified.' ... Such liability results by operation of law, and is not sufficient to constitute prejudice within the meaning of Rule 19(b)." Pl. Supp. Br. at 13.
Defendants' counsel also expressed concern that his client would suffer prejudice as a consequence of PIGA's absence on the ground that, with the umbrella carrier missing for a potentially critical policy year, Fireman's Fund's policy number XLX-12698751, which is excess to the missing coverage, might be forced to apply at a lower level than that provided by the terms of the policy. Plaintiff, however, is not seeking to require policy number XLX-12698751 to "drop down" to cover the missing layer of coverage for 1977-78. Plaintiff's counsel appreciates that it is plaintiff, and not defendants, which, assuming arguendo the 1977-78 policy year was the only one in which the jury determined "property damage" to have taken place, would have to fill the gap created by PIGA's absence. Plaintiff is willing to take that risk, and it is not a source of potential prejudice to defendants.
Finally, beyond these fundamental points, PIGA is neither necessary nor indispensable for an additional, basic reason. Even if PIGA were capable of being joined in the instant action, no recovery would be possible against it in any event. This is so because PIGA is nothing more than a safety net for situations in which the insured is left without another remedy upon the insolvency of its carrier; the governing statute requires exhaustion of all other available sources of insurance before proceeding against the Guaranty Association, and in the present case, other available sources will fully cover UTI's loss such that it is doubtful that the pollution claim at issue may ever be appropriately asserted against PIGA in this or any other forum.
It is true, as defendants assert, that PIGA generally "stands in the shoes" of the insolvent insurer. See Donegal Mutual Ins. Co. v. Long, 528 Pa. 295, 597 A.2d 1124 (1991). PIGA is "[t]o be deemed the insurer to the extent of its obligation on the covered claim and, to such extent, shall have all rights, duties and obligations of the insolvent insurer as if that insurer had not become insolvent." 40 Pa.S.A. § 991.1803(b)(2). This general statement of the powers and duties of PIGA is limited, however, by § 991.1817(a), the "non-duplication of recovery" provision, which provides:
Any person having a claim under an insurance policy shall be required to exhaust first his right under such policy. For purposes of this section, a claim under an insurance policy shall include a claim under any kind of insurance, whether it is a first-party or third-party claim, and shall include, without limitation, accident and health insurance, worker's compensation, Blue Cross and Blue Shield and all other coverages except for policies of an insolvent insurer. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under other insurance.
Id. Pending recovery from Fireman's Fund and any other insurance which potentially covers the pollution claim at issue, UTI has no remedy against PIGA. See Henninger v. Riley, 317 Pa.Super. 570, 576-77, 464 A.2d 469 (1983).
Here, not only does UTI currently lack a ripe claim against PIGA because other potentially available insurance has not yet been exhausted, but indeed UTI almost certainly never will have a claim against PIGA  in which case there could be no prejudice from a failure to join PIGA  because upon exhaustion of other available sources of insurance, the loss will be fully covered. This is *396 so because UTI obtained in excess of $38 million in insurance coverage from Fireman's Fund. UTI's total recoverable costs, without interest, through February, 1995 is less than $3 million. See Pl. Supp. Br. at 16. Over the next 30 years, UTI anticipates additional remediation costs in excess of $14 million (in 1991 dollars). Id. at 16-17. Under the circumstances, and because UTI "is free to select the policy or policies under which it is to be indemnified," J.H. France, 534 Pa. at 41, 626 A.2d 502, it is likely that no claim would ever properly be asserted against PIGA in light of the exhaustion requirement of 40 Pa.C.S.A. § 991.1817(a). Accordingly, common sense dictates that PIGA is not indispensable to this action.
For all these reasons, we find that PIGA is not a "necessary" party; in any event, even if PIGA were a "necessary" party to the litigation, it is not an indispensable party against whom the action could not proceed in equity and good conscience. We will deny defendants' motion to dismiss for failure to join an indispensable party under Fed.R.Civ.P. 19(b). The accompanying Order is entered.

ORDER
This matter having come before the court upon the motion of plaintiff, UTI Corporation, for leave to amend its amended complaint; and upon the cross-motion of defendants, Fireman's Fund Insurance Company and American Insurance Company, to dismiss plaintiff's complaint for failure to join indispensable parties under Rule 19, Fed. R.Civ.P.; and the court having considered the submissions and supplemental submissions of the parties and having heard oral argument; for the reasons stated in the Opinion of today's date;
IT IS this 18th day of August, 1995 hereby
ORDERED that plaintiff's motion for leave to amend is GRANTED, and plaintiff shall file its second amended complaint within ten (10) days of entry of this Order; and it is
FURTHER ORDERED that upon the request of defendants, and with the consent of plaintiff, defendants shall have twenty (20) days in which to answer plaintiff's second amended complaint; and it is
FURTHER ORDERED that defendants' cross-motion to dismiss plaintiff's complaint for failure to join indispensable parties under Rule 19 is DENIED.
NOTES
[1] Although defendants submitted opposition to plaintiff's motion, defendants stated at oral argument that they do not oppose plaintiff's motion, and thus the court will grant the motion as unopposed. It will not be the subject of further discussion herein.
[2] Plaintiff initially attacked the cross-motion on the ground that it does not relate to the subject of plaintiff's motion and on the ground that all dispositive motions were to have been filed by April 26, 1994. While plaintiff is correct that the procedure is not sanctioned by the Scheduling Order or the Local Rules, defendants' motion is of a type which may be raised at any time, including at trial on the merits. See Rule 12(h)(2), Fed.R.Civ.P.; 3A Moore's Federal Practice ¶ 19.05[2]; Schlumberger Industries, Inc. v. National Surety Corp., 36 F.3d 1274 (4th Cir. 1994) (Court of Appeals raised issue sua sponte on appeal, sought supplemental briefing, and held case must be dismissed because district court lacked subject matter jurisdiction). Accordingly, the court indicated in a letter dated July 24, 1995 that it was inclined to decide the cross-motion on the merits and ordered supplemental briefing on the cross-motion. The briefs have been received, argument was held on August 11, 1995, and we proceed to determine the issues raised in the cross-motion on the merits.
[3] The factual background is set forth in greater detail in the March 28 Opinion upon the cross-motions of the parties for summary judgment.
[4] The Home Insurance Company voluntarily paid $500,000.00  the limits of its 1977-1979 CGL policy  in connection with pollution at the site. Def. Supp. Br. at 24 n. 7.
[5] By operation of law, however, payment by PIGA on any claim is capped at $300,000. 40 Pa.S.A. § 991.1803(b)(1)(i)(B).
[6] Plaintiff UTI is a citizen of Pennsylvania. PIGA is also a citizen of Pennsylvania for purposes of determining diversity jurisdiction. See Independent Pier Co. v. Lloyd's London, No. 88-3467, 1988 WL 92171 (E.D.Pa. Sept. 1, 1988). In its Supplemental Brief in response to this court's letter of July 24, 1995 seeking supplemental briefing on the Rule 19 motion and directing the parties' attention to certain cases, including the Lloyd's case, plaintiff abandoned its position that PIGA was not non-diverse to it.
[7] But see Witco Corp. v. Travelers Indemnity Co., No. 93-4709, 1994 WL 706076, at *5 (D.N.J. April 7, 1994) (following City of Littleton v. Commercial Union Ins. Co., 133 F.R.D. 159 (D.Colo. 1990), and appearing to rely upon subsection (a)(1) on the ground that "[w]hen an excess insurance policy is explicitly stated to be in excess of the absent insurers' policies ... a determination of the excess insurers' liability is dependent on whether the primary insurance policies provide coverage.") The Witco case includes no reference to the then-recent Janney precedent of the Third Circuit.
[8] As will be discussed in detail infra, there is almost no possibility that a claim could ever be brought against PIGA by UTI in any event.