EMPLOYERS INSURANCE
OF WAUSAU, a Mutual
Company, Plaintiff,

v.

JOSTENS, INC., Continental Casualty
Company, Federal Insurance Company,
Fireman's Fund Insurance Company,
and The American Insurance Company,
Defendants.

CIV. No. 98–1338(DSD/JMM).

United States District Court,
D. Minnesota.

Sept. 30, 1998.

Richard M. Hagstrom, Scott J. Ryskoski, Jennifer L. Shea, Zelle & Larson, Minneapolis, MN, for plaintiff.

Mark M. Nolan, James T. Hynes, Stapleton, Nolan & McCall, St. Paul, MN, for Josten's, Inc.

Thomas A. Pearson, Cronan, Pearson, Quinlivan, Minneapolis, MN, for Continental Casualty.

John M. Anderson, Christopher R. Morris, Bassford, Lockhart, Truesdell & Briggs, Minneapolis, MN, for Federal Insurance Company.

Robert E. Salmon, Meagher & Geer, Minneapolis, MN, Jon E. Elenius, Caron, McCormick, Constants & Goldberg, Chicago, IL, for Fireman's Fund Insurance Company.

## ORDER

DOTY, District Judge.

This matter is before the court on objections by defendant Jostens, Inc. ("Jostens") to the report and recommendation of United States Magistrate Judge John M. Mason dated August 3, 1998. In his report, the magistrate judge recommends that the court deny Jostens' motion to dismiss the complaint of plaintiff Employers Insurance of Wausau ("Wausau") for failure to join an indispensable party. Jostens objects to several aspects of the report and recommendation, including the application of existing case law to the joinder issues raised in this case. Having conducted a de novo review of the file and record, the court has determined that the magistrate judge's recommendation should not be adopted. Instead, for the rea-

sons stated below, the court will grant Jostens' motion to dismiss.

### BACKGROUND

In 1964, Jostens, a Minnesota corporation that makes and markets commemorative products, began operating a manufacturing plant in Princeton, Illinois. From 1964 to 1976, Jostens used in-ground "filter beds" to dispose of its waste, including the cleaning solvent trichloroethane ("TCE"), a hazardous substance. In 1994, a nursing home adjacent to the Princeton facility discovered that part of its property had been contaminated by hazardous waste. Upon learning this, Jostens conducted its own investigation, discovered contamination on its property, and voluntarily applied for the state clean-up program.

In November 1996, Jostens commenced a state action against nondiverse Federated Mutual Insurance Co. ("Federated"), which provided Jostens comprehensive general liability ("CGL") coverage during the 1964 to 1976 period when Jostens used filter beds for waste disposal. About a year later, during the pretrial stage of the litigation, experts for both Jostens and Federated determined that TCE had been spilled, in separate incidents, at the Princeton site in 1981 and 1982. At the time of these alleged spills, Jostens was covered by a CGL policy issued by Wausau. Jostens informed Wausau of potential coverage obligations arising from these spills, and the two parties negotiated coverage issues for the next few months. In May 1998, however, negotiations broke off, and on May 12, 1998 Wausau commenced the present diversity action asking for a declaration of its rights and obligations under the coverage it had provided Jostens. Subsequently, Jostens moved to join Wausau in its state action against Federated. The state court denied Jostens' motion. Since then, the trial date

for the state action has been postponed until March 1999.

### DISCUSSION

Jostens moves for dismissal on the grounds that, under Fed.R.Civ.P. 19, Federated is a necessary and indispensable party to the lawsuit brought by Wausau. Because Federated cannot be joined without destroying the court's diversity jurisdiction,[1] Jostens contends that the case should be dismissed.

#### A. *Rule 19(a): Is Federated a Necessary Party?*

■ Rule 19(a)(1) provides that an absent party is necessary to a suit when without that party "complete relief cannot be accorded among those already parties."[2] The Supreme Court has directed courts to evaluate the potential for prejudice under Rule 19 with an eye toward the practical context in which a case arises. *See Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); *see also* FED.R.CIV.P. 19 advisory committee's note (1966) ("[T]he case should be examined pragmatically and a choice made between the alternatives of proceeding with the action in the absence of particular interested persons, and dismissing the action."); Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 1604 (1986) ("It should be noted that the prejudicial effect of nonjoinder ... may be practical rather than legal in character.").

In making its argument that Wausau's complaint should be dismissed on joinder grounds, Jostens relies on a case with strong parallels to this one, *Schlumberger Industries, Inc. v. National Sur. Corp.,* 36 F.3d 1274 (4th Cir.1994). In *Schlumberger,* two CGL insurers brought a declaratory judgment suit in federal court against an insured manufacturing company to determine their

---

1. Wausau does not dispute that the presence of Federated, a Minnesota company, would destroy diversity jurisdiction under the principles articulated in *City of Indianapolis v. Chase National Bank,* 314 U.S. 63, 69, 62 S.Ct. 15, 86 L.Ed. 47 (1941) (stating that the alignment of parties for diversity purposes hinges on the " 'principal purpose of the suit,' ... and the 'primary and controlling matter in dispute' " (citations omitted)).

2. As a technical matter, Rule 19(a)(2) does not apply to this case because Federated has not directly claimed an interest in the action. Nonetheless, the provision's express concern that a party's absence might increase the risk of inconsistent results is certainly applicable to the present case. *See* Fed.R.Civ.P. 19(a)(2).

rights and responsibilities for CERCLA cleanup costs. A month later, the insured brought suit in state court against a number of insurance companies, including the two insurers bringing the federal action, for its own declaration of rights and responsibilities under various CGL policies issued to the company. The contamination at the company's manufacturing plant was alleged to have occurred over a span of time covered by different insurers during different periods. However, several of the CGL insurers potentially responsible for the cleanup costs were nondiverse and therefore could not be joined in the federal suit. Performing a Rule 19 analysis, the *Schlumberger* court found that the nondiverse insurers were necessary and indispensable parties and that, therefore, the federal lawsuit should have been dismissed.

Conducting a Rule 19(a)(1) analysis, *Schlumberger* addressed the special risks faced by an insured party who incurs cleanup liability covered during different periods by different insurers: "Were the district court allowed to proceed with less than all of [its] insurers as parties, there is a practical possibility for prejudice." The insured party "could be 'whipsawed' . . . and wind up with less than full coverage *even though it was legally entitled to full coverage.*" *Id.* at 1287 (citation omitted) (emphasis in the original). *Schlumberger* then elaborated:

> If two courts handle different aspects of the case separately, the possibility of inconsistent judgments arises. In particular, different interpretations of law . . . or different findings of fact . . . will result in inconsistent judgments. . . .
>
> The potential for prejudice arising from different factual determinations . . . is, we think, especially pronounced: if all of the insurers are not joined in the same case and instead the matter of when the damage occurred is determined by two different courts, and their determinations differ

from one another, [the insured] will receive less than full coverage. Importantly, if the first court determines that the damage occurred during a period of time covered by an insurer only in the second case, [the insured] will be unable to use this finding preclusively against that insurer, for that insurer was not a party to the first case.

*Id.* at 1286–87 (citations and footnotes omitted).

Because of "the overarching legal and factual issues of when the contamination in question occurred" in the case before it, the *Schlumberger* court held that the absent CGL carriers were necessary parties.

Wausau asserts that the reasoning of *Schlumberger* does not apply to the present case. The *Schlumberger* court, it argues, was concerned about unsettled state law regarding environmental liability insurance. In contrast, Wausau contends, the present case raises no novel issues of state law. This argument misses the central point of *Schlumberger*, which primarily addressed "factual, as opposed to legal, whipsaw." *Id.* at 1287. This concern clearly pertains to the present litigation, in which state and federal courts are being asked to separately resolve coverage issues between the insured and its consecutive insurers. Specifically, two different courts may be asked to determine when coverage-triggering factual events occurred at Jostens' Princeton, Illinois plant. In the federal court proceeding, Wausau might convince the factfinder that most or all of the "actual injury" occurred during Federated's coverage period. At the same time, in the state court proceeding, Federated might convince the factfinder that most or all of the "actual injury" occurred during Wausau's coverage period.[3] Significantly, as *Schlumberger* observed, because neither insurer is party to both cases, Jostens may not preclude the identical factual questions from being litigated in both trials.[4]

---

**3.** In fact, the danger of factual whipsaw is perhaps greater in this case than in *Schlumberger*. In *Schlumberger*, all the insurers were joined in the state proceeding. In this case, however, the insurers are fully present in neither proceeding. If both cases were allowed to proceed, Wausau and Federated would have equal opportunity to

externalize their liability, each pointing its finger at an empty chair in the respective courtrooms.

**4.** Wausau itself recognizes the potential for inconsistent findings of fact: "Of course, should Federated be ordered in the state court action to pay amounts to defend and/or indemnify Jostens, Wausau could not be ordered to pay for these

Additionally, Wausau's contention that the present case presents no risk of legal whipsaw is incorrect. To be sure, the Minnesota Supreme Court has addressed many of the underlying insurance law issues implicated in this case. *See, e.g., Minnesota Mining & Mfg. v. Travelers Indem. Co.,* 457 N.W.2d 175, 184 (Minn.1990) (holding that claims for environmental response costs are "damages" under standard CGL policies); *Northern States Power Co. v. Fidelity and Cas. Co. of N.Y.,* 523 N.W.2d 657 (Minn.1994) (holding that "actual injury" triggers CGL-policy coverage). However, in *NSP,* the state supreme court attached an important caveat: "We do not expect this case will be the 'last word' in this area. Environmental liability law, like any other area of the law, will have to develop over time and trial courts must be flexible in responding to new fact situations." 523 N.W.2d at 665.

Indeed, one question of law central to this case remains especially volatile: how to apportion liability between multiple insurers. *NSP* addressed how to divide liability between insurers in the context of "continuous" groundwater contamination. While the *NSP* court held on the facts before it that damages should be allocated between consecutive insurers using a "pro rata by time on the risk" approach, it also stated that "trial courts must be given the flexibility to apportion them in a matter befitting each case." *Id.* at 663. Shortly thereafter, in fact, the state supreme court applied a different damages scheme in a case involving an accidental spill. *See SCSC Corp. v. Allied Mut. Ins. Co.,* 536 N.W.2d 305, 317 (Minn.1995). What Wausau terms the "settled" rule of *NSP* is, therefore, largely an instruction to trial courts that they should remain flexible. This

is significant because it appears the present litigation will implicate both genres of environmental harm and damages allocation. A complex causation scenario might call for a modified or hybrid scheme of allocation, potentially leading two different courts to apply two different legal standards to the allocation of damages. For this reason, Jostens faces a significant possibility of receiving inconsistent legal determinations.

Wausau also cites several cases it suggests reach conclusions different than that of *Schlumberger* about the Rule 19 issues in this case. In *Rhone–Poulenc Inc. v. International Ins. Co.,* 71 F.3d 1299 (7th Cir. 1995), for example, the Seventh Circuit reversed a trial court's holding that an insured's action against his CGL insurers requires, as a per se rule, complete joinder of the primary insurers. *See also UTI Corp. v. Fireman's Fund Ins. Co.,* 896 F.Supp. 389, 393 (D.N.J.1995); *City of Littleton v. Commercial Union Assurance Cos.,* 133 F.R.D. 159, 162 (D.Col.1990). As the *Rhone–Poulenc* court stated, "It is not always unjust for an insured with several primary insurers to proceed against all of them." 71 F.3d at 1301. Rather, it observed, a Rule 19 determination "depends on the circumstances of the case." *Id.*

*Schlumberger* in no way departs from the pragmatic principles articulated in *Rhone–Poulenc.*[5] *Schlumberger* agreed that the Rule 19 assessment can be properly made only "in the context of the particular case at the bar." 36 F.3d at 1286. In fact, this shared pragmatic approach indicates the reason the two cases reached different conclusions on joinder: the factual circumstances of each were different. Most impor-

same amounts in this action, i.e., no double recovery." Wausau's Memorandum of Law in Opposition to Jostens' Motion for Dismissal 4 n. 3 (June 22, 1998) [hereinafter Wausau's Opposition Memo]. Wausau has collateral estoppel arguments at its disposal to preclude such a double recovery by Jostens. Jostens, unfortunately, does not have a similar way to guard against a whipsawed recovery.

5. Wausau states that the *Rhone–Poulenc* court "*criticized*" *Schlumberger. See* Wausau's Opposition Memo at 17. In fact, *Rhone–Poulenc* cited *Schlumberger* favorably for the proposition that Rule 19 assessments hinge on the circumstances

of a case. *See* 71 F.3d at 1301. *Rhone–Poulenc* did disagree with the *Schlumberger* court's reading of a Seventh Circuit case, *Evergreen Park Nursing & Convalescent Home, Inc. v. American Equitable Assur. Co.,* 417 F.2d 1113 (7th Cir. 1969), which addressed the joinder requirements in cases with multiple insurers on the risk at the same time. As the *Schlumberger* court made clear, however, this reading played no role in its decision. *See* 36 F.3d at 1286 ("We need not decide that question [addressed in *Evergreen Park*] because the case at bar presents an even stronger case for indispensability.").

tant, in *Rhone–Poulenc* the *insured* limited joinder of some insurers, whereas in *Schlumberger* some *insurers* limited joinder of other insurers. The *Rhone–Poulenc* court's observation that a "victim of wrongdoing is not generally required to sue all the wrongdoers," 71 F.3d at 1301, simply does not apply to the circumstances embodied in *Schlumberger.* Further, the *Rhone–Poulenc* court was not confronted with the perverse state-federal procedural posture that so threatened the insured in *Schlumberger.* It would be misleading, therefore, to suggest that *Rhone–Poulenc* is somehow in tension with the holding in *Schlumberger.*

Indeed, a subsequent Seventh Circuit case, *Sta–Rite Indus., Inc. v. Allstate Ins. Co.,* 96 F.3d 281 (7th Cir.1996), underscores the critical role context plays in Rule 19 assessments. *Sta–Rite* involved a declaratory judgment action brought in federal court by an insured against some but not all of its insurers. Despite the *Rhone–Poulenc* precedent, the *Sta–Rite* court held that an absent insurer was necessary and indispensable to the suit. Because the absent insurer was a significant coverage provider during some of the coverage period at issue, and because a parallel state court proceeding with all the parties present was already under way, the *Sta–Rite* court determined that prejudice would be best avoided by dismissing the suit under Rule 19. *See id.* at 285.

In sum, the court finds *Schlumberger*'s Rule 19(a)(1) analysis completely persuasive as regards the particular circumstances of this case. Viewed in the context of the concurrent state litigation, Federated's absence from this action may severely prejudice the ability of Jostens to obtain full relief. Thus, the court concludes that Federated is a necessary party to this action.

**B.** ***Rule 19(b): Is Federated an Indispensable Party?***

■ Having concluded that the nondiverse Federated is a necessary party, the court must now "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Fed. R. Civ. Pro. 19(b). Rule 19(b) instructs that the following factors be considered:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The 19(b) factors reiterate many of the considerations that should inform a 19(a) analysis. *See* Wright, Miller & Kane, *supra,* §§ 1604, 1608. The court has, in fact, already carefully considered the first and third factors in determining that Jostens faces a high risk of prejudice in the context of the current case.

Wausau would have the court ignore this risk because, it argues, any potential prejudice to Jostens would be completely self-inflicted. The argument goes like this: Jostens shaped the current procedural context by initially filing this suit in state court naming only Federated as a defendant. When Wausau later filed a separate suit in federal court to determine its own rights and obligations, and when the state court refused to join Wausau in the state court action—thereby creating the potential for complete whipsaw—Jostens had only themselves to blame. Put another way, if Jostens thought both insurers were so indispensable, it should have joined them in the first place.

This argument is a red herring. Jostens initially brought its action against Federated alone became it believed it had a claim against Federated alone. Minnesota's Civil Rules requires a party to bring only those claims that are "well grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Minn. R. Civ. P. 11. Jostens avers that for many months after beginning its action against Federated, it possessed no evidence that TCE contamination had occurred during the Wausau coverage period. In line with the "actual injury" rule adopted by the Minnesota Supreme

Court, Jostens sued the only primary insurance company it believed was on the risk when the injury occurred. The court will not penalize Jostens for waiting until it had reasonable grounds before attempting to bring Wausau into court. Even if the court were to agree that Jostens should have more promptly attempted to join Wausau in its state action once it discovered the later spills—and the record is ambiguous as to what actually occurred during the negotiations—such a delay would not justify the court in allowing itself to become the lever in a state-federal litigative trap. *Cf. Dryden v. Dryden*, 265 F.2d 870, 873 (8th Cir.1959) ("Litigation is the pursuit of practical ends, not a game of chess.").

Wausau also argues that because the state court has already rejected Jostens' attempt to join Wausau in the state court action, dismissing the present case would do little to reduce the threat of contradictory judicial determinations.

The court has reason to believe this will not be the case. While the state court rejected as untimely Jostens' attempt to join Wausau, a renewed motion will occur under entirely different circumstances. For one thing, the trial, imminent at the time of the ruling, has been moved to March 1999. For another, the federal action is now being dismissed. Before these occurrences, joining Wausau in the state action might understandably have seemed like a maneuver that would increase inconsistency and reduce judicial efficiency. Now, without a parallel federal action muddying the context, the state court may well decide that the equities balance out in favor of joinder. In fact, the state court has itself indicated that the dismissal of the federal action might cause it to reconsider its position. *See* Transcript of Motion Hearing to Add Party, *Jostens, Inc. v. Federated Mutual Insurance Co.*, No. C9–96–121349 (Minn. Dist. Ct., Ramsey Co., July 1, 1998). At the very least, even if parallel state actions are allowed to proceed, any novel or difficult questions of state law they might raise will receive uniform review by the state appellate body.

The second factor under 19(b) inquires whether the court may reduce prejudice, short of dismissal, by specially tailoring the proceedings. Neither party has suggested a way to accomplish this without draining the federal proceedings of all utility. The court has been similarly unsuccessful.

Finally, the fourth consideration under 19(b) asks whether the plaintiff will have an adequate remedy if the case is dismissed. Wausau suggests that dismissal will impair its own ability to adequately litigate its rights. By making this claim, of course, Wausau tacitly concedes that the parties are likely to become joined, one way or another, in a single state action after this court's dismissal of the federal action. If this is not the case, then Wausau has no reason to complain: it may proceed in state court with the identical case it brought in federal court. Even if Wausau is forced to join the pending state action, however, it does not face an unreasonable amount of ground to make up. First, there is no guarantee that March 1999 will remain the trial commencement date if more parties are joined. Second, Wausau has now had four months to prepare for the issues raised in the coverage litigation, and much of the work done in preparation for this suit will be transferable to the state court action. Finally, Wausau will have the significant benefit of the other party's already discovered materials—it will certainly not have to start from scratch.

In short, none of the factors under Rule 19(b) suggest a compelling reason why this action should continue without the necessary party Federated. Indeed, considerations of "equity and good conscience" counsel exactly the opposite. The court thus concludes that Federated is both a necessary and indispensable party to the current action.

## CONCLUSION

After conducting a de novo review of the file and record, the court has concluded that the magistrate judge's recommendation should not be adopted. Instead, **IT IS HEREBY ORDERED** that Jostens' motion to dismiss Wausau's complaint be granted. The court will await further motion before

determining whether the remaining cross-claims in this case should be dismissed.